UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA TAYLOR,

    Plaintiff,

                                            Case No. 16-cv-11797

v.

                                            HON. MARK A. GOLDSMITH

J. C. PENNEY COMPANY, INC.,

    Defendant.
_____/

**OPINION AND ORDER
GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS (Dkt. 15)**

Plaintiff Paula Taylor was an employee of Defendant J. C. Penney Company, Inc. from May 1981 until her termination in January 2016. In her amended complaint, Taylor alleges that J. C. Penney committed various violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This matter is before the Court on J. C. Penney's motion to dismiss portions of count one of the amended complaint (Dkt. 15). The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). As discussed below, the Court grants the motion.

**I. BACKGROUND**

The Court has already provided a detailed factual background for this case when ruling on J. C. Penney's first motion to dismiss. See Taylor v. J. C. Penney Co., Inc., No. 16-cv-11797, 2016 WL 4988054, at *1 (E.D. Mich. Sept. 19, 2016). For the sake of brevity, therefore, the Court recites only the following background that is pertinent to the issues in the present motion.

On June 8, 2015, Taylor had surgery on her lower back and took medical leave under the FMLA. Id. at *1. Taylor returned to work on August 12 with certain physical restrictions, including no excessive bending or lifting over twenty-five pounds, and she could only work four-hour days. Id. Although she was cleared to work fulltime with the same physical restrictions on October 13, Taylor used her Paid Time Off ("PTO") from October 15 through 31. Id.; Am. Compl. ¶ 29 (Dkt. 14) (PTO "may be used any time an employee wants to be off work on a regularly scheduled day."). Taylor was scheduled to return to fulltime work on November 2, 2015. Taylor, 2016 WL 4988054, at *1.

When Taylor arrived to work on November 2, her store manager, Anita Szostek, informed her that Szostek could not accommodate the restrictions set by Taylor's doctor, and Szostek sent Taylor home. Id. Taylor continued to show up for work from November 2 through November 8, but she was told to return home each day by the acting manager and/or leader of the day. Id. According to Taylor, Szostek "allow[ed] the time and attendance computer attendance system to mark [Taylor's] time sheet as . . . Failure to Report." Am. Compl. ¶ 22.

During the week of November 2 through 5, Taylor contacted J. C. Penney's human resources department, which is administered by a group referred to as the "Powerline Specialists," to coordinate short-term disability benefits, which J. C. Penney offers its employees and refers to as Illness Recovery Time ("IRT"). Am. Compl. ¶¶ 27-28, 31. The Powerline Specialists initially told Taylor that she was not entitled to IRT, but that Taylor could use her PTO. Id. ¶ 31. The distinction between PTO and IRT is significant, says Taylor, because PTO "is a component of compensation that is earned and banked," such that any unused PTO time "is paid to the employee at the termination of employment." Id. ¶ 29. On the other hand, eligible

employees are entitled to a certain amount of IRT, which is not earned or banked through work. Id. ¶ 28. If the employee does not use the IRT, it is lost. Id.

At a visit to Taylor's doctor on November 10, the doctor removed Taylor's physical restrictions, and she returned to work on November 11. Id. ¶¶ 38-40. On November 20, Taylor received a letter from the Powerline Specialists, which stated that Taylor was approved for IRT from November 3 through November 10. Id. ¶ 41. However, the November 2 absence was classified as PTO time, not IRT. Id. ¶ 75.

Later, in January 2016, Taylor informed Szostek that Taylor was going to have knee surgery on February 11, 2016. Taylor, 2016 WL 4988054, at *1. On January 25, 2016, Taylor was fired for insubordination and for an incident involving a coupon that a customer had given Taylor on January 18, which was then supposed to be given to Taylor's sister. Id. After her termination, Taylor received a check that included a payout for her accumulated PTO time, which was less one day due to the PTO designation for November 2. Am. Compl. ¶¶ 54, 56, 76-77, 87-90.

## II. STANDARD OF DECISION

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010). To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).

## III. ANALYSIS

In her amended complaint, Taylor asserts one count of FMLA interference and one count of FMLA retaliation. Regarding her claim for FMLA interference, Taylor advances three distinct theories that J. C. Penney allegedly interfered with her exercise of FMLA rights. Because J. C. Penney does not challenge the third theory, see Def. Br. at 11 n.5 (Dkt. 15); Def. Reply at 1, 3 n.2 (Dkt. 17), which is predicated on Taylor's termination for the anticipatory exercise of FMLA leave in February 2016, see generally Am. Compl. ¶¶ 91-97, the Court will confine its analysis to the first two theories of liability.

Taylor first alleges that J. C. Penney interfered with her right to take intermittent FMLA leave when the Powerline Specialists "fail[ed] and, in fact, refus[ed] to timely certify her" for IRT for the time between November 2 to November 10, 2015. Am. Compl. ¶ 70. The untimeliness purportedly "cut short" Taylor's entitlement to further intermittent FMLA leave, id. ¶ 77, because Taylor "may have claimed additional weeks of FMLA leave" had the IRT request been timely certified, id. ¶ 74 (emphasis added). See also id. ¶ 72 ("Were it not for Powerline Specialists' failure to properly approve her claim for IRT, Plaintiff likely would have left the restrictions in place, and taken FMLA leave until such time as the restrictions were lifted and Szostek allowed her to work again." (emphasis added)).

Taylor then acknowledges that, on November 20, she was approved for IRT for November 3 through November 10, but that November 2 was classified as a PTO day, not an IRT day. Id. ¶¶ 41, 75. Taylor claims that she was entitled to use IRT for November 2, but Taylor contends that, by classifying that absence as PTO, J. C. Penney prejudiced her because she lost a day of banked PTO time. Id. ¶¶ 76, 77.

This latter assertion is substantially similar to Taylor's second purported theory of liability that J. C. Penney interfered with her right to intermittent FMLA leave by initially

reporting the absences from November 2 to November 10 in the system as "Failure to Report." Id. ¶¶ 22, 34, 84. Taylor then states that, although most of these failure-to-report days were "reclassified in the system as IRT days," id. ¶ 88, November 2 was "reclassified as PTO," id. ¶ 86, which has "never [been] corrected," id. ¶ 88. Taylor asserts that she "should have been allowed to use IRT" for November 2 "due to her medical condition," id. ¶ 87, and that the PTO misclassification prejudiced her because she "lost a day of compensable PTO time," id. ¶ 90.

These two theories of liability for FMLA interference are apparently based on the following: (i) J. C. Penny interfered with Taylor's right to intermittent FMLA leave because, had the Powerline Specialists timely approved her for IRT, she may have taken further intermittent FMLA leave; and (ii) J.C. Penny interfered with Taylor's right to intermittent FMLA leave because J. C. Penney misclassified the November 2 absence as PTO, as opposed to IRT, which resulted in some financial loss at the time of Taylor's termination. J. C. Penney argues that these two theories of liability should be dismissed. The Court addresses the two theories and corresponding arguments in turn.[1]

### A. Possibility of Claiming Further Intermittent FMLA Leave

To make out a prima facie case of FMLA interference, a plaintiff must demonstrate:

---

[1] Although not raised by either party, there is some authority to suggest that, when a plaintiff asserts multiple theories of liability as part of a single claim for relief, the district court cannot partially dismiss one of those theories at the motion to dismiss stage of litigation. E.g., Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016) (citing BBL, Inc. v. City of Angola, 809 F.3d 317, 325 (7th Cir. 2015)). There is authority reaching the opposite conclusion. E.g., Int'l Bus. Machs. Corp. v. Priceline Grp., Inc., No. 15-137, 2017 WL 1349175, at *6-7 (D. Del. Apr. 10, 2017); see also Schexnaydre v. Travelers Ins. Co., 527 F.2d 855 (5th Cir. 1976) (per curiam). The Court adopts the latter approach. A court should consider the viability of a particular theory, even if the entirety of the claim will not be dismissed, because allowable discovery tracks the claims as pled. If a defendant cannot seek prompt exclusion of a legally non-viable theory, then extensive discovery might have to be undertaken on an invalid theory until that theory could be rejected at the summary judgment stage. Such an approach would waste litigant resources.

5

> (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied or interfered with the employee's FMLA benefits to which she was entitled.

Wallace v. FedEx Corp., 764 F.3d 571, 585 (6th Cir. 2014).

Regarding the third factor, an employee is entitled to FMLA leave if he or she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)). A serious health condition, in turn, is defined as an "illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital, hospice, or residential facility" or "continuing treatment by a health care provider." Festerman v. Cnty. of Wayne, 611 F. App'x 310, 313-314 (6th Cir. 2015) (quoting 29 U.S.C. § 2611(11)). "An employee with a serious health condition may take intermittent leave or establish a reduced work schedule under the FMLA without fear of adverse employment actions taken by the employer as a result." Id. at 314. "Intermittent leave is leave taken in separate blocks of time for a single qualifying reason." Id. "In all events, however, there must be a medical necessity for intermittent leave." Rush v. E.I. DuPont DeNemours & Co., 911 F. Supp. 2d 545, 560 (S.D. Ohio 2012) (citing 29 C.F.R. § 825.202(b)(2); 29 C.F.R. § 825.800).

Employees are also required to "provide employers with thirty days['] notice when the necessity for FMLA leave is foreseeable and 'such notice as is practicable' when the need for FMLA leave is not foreseeable." Beaver v. RGIS Inventory Specialists, Inc., 144 F. App'x 452, 456 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(e)(1)); see also 29 C.F.R. §§ 825.302-.303. Notably, the employee is not required to expressly state that he or she is seeking FMLA leave "or even mention the FMLA." Beaver, 144 F. App'x at 456. Rather, the employee need only make

6

the employer aware that leave is needed for an FMLA purpose: "[t]he relevant inquiry is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Id.

In its motion to dismiss, J. C. Penney argues that Taylor's allegation that she "may have claimed additional weeks of FMLA leave" in November 2015 is contradicted by other allegations that purportedly show that Taylor was not entitled to such leave. Def. Br. at 10-11. According to J. C. Penney, the factual allegations in the amended complaint demonstrate that Taylor was not entitled to further leave, because she had been released by her doctor to return to fulltime work on October 13; all of her restrictions were removed on November 10; and her doctor never reinstated those restrictions. See id. at 10. J. C. Penney also argues that Taylor did not provide notice of her request for FMLA leave. Id.

In response, Taylor argues that her allegations are not contradictory because she was able to work four-hour days with the restrictions between August and October 2015, and she was cleared to work fulltime with the same restrictions in November 2015, but it was Szostek who decided that the restrictions could no longer be accommodated. Pl. Resp. at 11 (Dkt. 16). Taylor then states that she had a right to "utilize intermittent leave" because "Szostek would not allow [Taylor] to work due to her new-found concerns about [Taylor's] medical condition." Id.[2]

The Court agrees with J. C. Penney that Taylor has not sufficiently alleged facts that demonstrate that she was actually entitled to further intermittent FMLA leave, or that she notified J. C. Penney of her intention to take such leave in November 2015.

---

[2] Even if these assertions somehow supported an FMLA entitlement claim based on J. C. Penney's purported failure to reinstate Taylor following FMLA leave, see Grace v. USCAR, 521 F.3d 655, 669 (6th Cir. 2008), Taylor has made it clear in her amended complaint that the interference theories are predicated on her attempt to take FMLA leave, and not a failure to reinstate.

Although Taylor alleges that it was J. C. Penney's impression that Taylor had a serious medical condition that interfered with her ability to perform her job duties, see Am. Compl. ¶¶ 30, 66, 67(b) and (d), 69, 80, 82, Taylor clearly states that she "did not believe that she should have to collect IRT or that she was unable to work between November 2 and 8 because she was able to work," id. ¶ 30; see also Pl. Resp. at 9 ("It should be remembered that Taylor was able to work, even with the restrictions that her doctor put in place."); id. at 10 ("[E]ven though [Taylor] could have worked, Szostek claimed that [Taylor] could not."); id. at 12 ("[Taylor] believed, and still believes, that she was able to work her position at this point in time."). Taylor never alleges in the amended complaint that it was her belief that she still suffered from a serious medical condition in November 2015 that entitled her to claim intermittent FMLA leave. Nor does Taylor allege that she still had a serious health condition in November 2015, or that there was a medical necessity for intermittent leave at that time.

Taylor further alleges that she met with her doctor on November 10, 2015 and, despite his supposedly "strong reservations" against it, the doctor removed the physical restrictions. Am. Compl. ¶ 38. The doctor cautioned Taylor that he would reinstate those restrictions "if she was in pain." Id. However, Taylor does not allege that she had a serious medical condition that required the continued imposition of the workplace restrictions in November 2015, that she was ever in pain following the removal of the restrictions, or that the doctor ever placed restrictions on her employment after the removal. Because Taylor claims that she was able to work, and never claims that the removal of the restrictions affected her job whatsoever, it is hard to fathom how Taylor would be entitled to further intermittent FMLA leave without any other allegations in support of a medical necessity.

Moreover, Taylor did not respond to J. C. Penney's argument that Taylor did not provide notice that she intended to take FMLA leave in November 2015. The Court highlighted this concern in its earlier decision. See Taylor, 2016 WL 4988054, at *5.

In the amended complaint, Taylor states that she "attempted to exercise her right to FMLA leave by contacting 'Powerline Specialists,' Defendant JCP's HR department, and claiming Illness Recovery Time, a benefit to which she was entitled under her employment." Am. Compl. ¶ 68. Aside from this single assertion, however, Taylor does not allege that she actually sought to take any FMLA leave in November 2015 as distinct from her request for IRT. This stands in stark contrast to her clearly pleaded allegation that she informed both Szostek and the Powerline Specialists in January 2016 that she would require medical leave for a knee surgery scheduled for mid-February 2016. Id. ¶ 91.

Taylor has also made it clear in her amended complaint and response brief that her contact with the Powerline Specialists in November 2015 concerned her request for IRT. See Am. Compl. ¶ 30 ("Plaintiff, therefore, contacted Powerline Specialists and claimed IRT time."); id. ¶ 31 ("During the week of November 2 – 5, 2015, Plaintiff kept in contact with Powerline Specialists in an attempt to coordinate the Illness Recovery Time[.]"); id. ¶ 74 ("Had it not been for Powerline's refusal to rightfully approve her claim for IRT, Plaintiff may have claimed additional weeks of FMLA leave due to the circumstances presented by Szostek's actions."); Pl. Resp. at 2-3 ("Between November 2 – 5, 2015, Plaintiff contacted JC Penney's benefits department 'Powerline' and attempted to coordinate short term disability benefits, which Defendant refers to as 'Illness Recovery Time' or 'IRT.'"); id. at 10 ("Taylor's request for IRT caused Plaintiff to abbreviate her period of convalescence by pressuring her doctor to, against his better judgment, remove her restrictions."); id. at 11 ("Plaintiff was prejudiced in her exercise of

her right to take IRT while Szostek had her off work due to her doctor's restrictions."); id. ("Powerline refused to accommodate this by improperly refusing to approve her claim for IRT.").

Even though Taylor was not required to expressly state that she was seeking FMLA leave, see Beaver, 144 F. App'x at 456, Taylor does not argue that the information given to the Powerline Specialists was sufficient to reasonably apprise them of her request to take time off for a serious health condition, as opposed to financial concerns involving paid leave. This is particularly apparent from Taylor's allegations that, "[i]n each conversation with Powerline Specialists, Plaintiff stated that she could not afford to be off without pay during this period of time." Am. Compl. ¶ 32; see also id. ¶ 68 ("Plaintiff unequivocally told the various representatives at Defendant JCP's 'Powerline' that she could not afford to be without pay for this period of time.").

Based on these allegations, the Court concludes that Taylor failed to sufficiently allege facts demonstrating that she was entitled to intermittent FMLA leave in November 2015. Taylor also failed to sufficiently plead facts that she notified J. C. Penney of her intention to take FMLA leave in November 2015. Therefore, Taylor's contention that her FMLA rights were interfered with because she "may" have claimed further intermittent FMLA leave is purely speculative and does not state a plausible claim for relief. This theory of count one in the amended complaint is dismissed.

**B. Particular Designation of Paid Leave Under an Employer's Policy**

According to J. C. Penney, a claim of FMLA interference is only concerned with rights provided under the FMLA. Def. Br. at 8. J. C. Penney argues that the FMLA does not "cover[ ] a dispute over whether an absence is properly credited as PTO or IRT" because an employee is

10

not entitled under the FMLA to either receive IRT for absent days or have absences characterized as IRT, as opposed to PTO. Id.; see also id. ("[A] claim for FMLA interference does not lie where the disagreement concerns whether an employee's absence was categorized as PTO or IRT").

Taylor does not directly respond to this argument. Nor does her response brief suggest that an employee is entitled to any particular designation of paid leave under the FMLA. See Pl. Resp. at 10 (acknowledging that both PTO and IRT are "forms of paid leave" that J. C. Penney offers its employees). Rather, Taylor argues that she "should have been allowed to claim IRT and FMLA intermittent leave while [her restrictions] were in place," id. at 9 (emphasis added), and that she "suffered monetary loss attributable to [the Powerline Specialists'] failure to correctly handle her claim for IRT" by designating the November 2 absence as PTO instead, see id. at 10; see also id. at 11 ("Plaintiff had a right to take IRT time and to utilize intermittent leave. But[ ] Powerline refused to accommodate this by improperly refusing to approve her claim for IRT." (emphasis added)).

The Court agrees with J. C. Penney. "The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year" and "prohibits employers from interfering with, restraining, or denying the exercise of their employees' rights under the statute." Edgar v. JAC Prods., Inc., 443 F.3d 501, 506-507 (6th Cir. 2006). For an FMLA-interference claim, "the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA — for example, a twelve-week leave or reinstatement after taking a medical leave." Id. at 507; see also id. at 511 ("[FMLA] benefits are usually the 12 weeks of leave (with continued insurance coverage) and restoration to the employee's previous position or an equivalent one."); Caldwell v. Building Plastics, Inc., No. 07-2242, 2009 WL 2749964, at *2 (W.D. Tenn. Aug. 26, 2009)

11

("[T]he FMLA only requires that employers provide employees with twelve weeks of unpaid leave." (citing 29 U.S.C. § 2612(c))).

The FMLA does not entitle an employee to a particular designation of paid leave offered under an employer's policy. See Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) ("To balance the needs of employers and sick employees, Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave benefit offered by the employer."); Williams v. Lyondell-Citgo Refining Co. Ltd., No. Civ.A. H-04-2321, 2005 WL 1562422, at *5 (S.D. Tex. July 1, 2005) ("The FMLA recognizes that FMLA benefits and sick pay benefits are separate benefits." (citing Strickland, 239 F.3d at 1205)); cf. Walthall v. Fulton Cnty. Sch. Dist., 18 F. Supp. 2d 1378, 1384 (N.D. Ga. 1998) ("Where the plaintiff has an option of claiming paid sick leave or FMLA leave, the employee must make an election to be covered by the Act. . . . The Act should not be interpreted to give every terminated employee the right to retroactively claim that his or her sick leave should be considered FMLA leave, thereby supporting a claim pursuant to the Act's non-discrimination provisions."). Although an employer may require an employee to use accrued paid leave for some or all of the twelve-week FMLA-leave period, provided the employer properly notifies the employee of the designation, see Allen v. Butler Cnty. Comm'rs, 331 F. App'x 389, 393 (6th Cir. 2009),[3] Taylor does not allege that any of her paid leave

---

[3] Accord U.S. Dep't of Labor, Wage & Hour Division, The Family and Medical Leave Act, Questions & Answers, https://www.dol.gov/whd/regs/compliance/1421.htm (last visited May 4, 2017) ("Q: Does the law guarantee paid time off? [A:] No. The FMLA only requires unpaid leave. However, the law permits an employee to elect, or the employer to require the employee, to use accrued paid leave, such as vacation or sick leave, for some or all of the FMLA leave period. When paid leave is substituted for unpaid FMLA leave, it may be counted against the

improperly counted against her FMLA entitlement or that J. C. Penney failed to notify her of any such designation.

Taylor's reliance on the law-of-the-case doctrine does not warrant a different result. According to Taylor, the Court "suggested" that improperly categorizing paid leave as PTO could satisfy a plausible claim for FMLA interference provided Taylor alleges some resulting harm. Pl. Resp. at 8-9. Taylor claims that her newly added allegations of harm in the amended complaint have sufficiently remedied any pleading deficiency, thereby allowing this theory of liability to survive. Id. The Court disagrees.

The Court previously acknowledged that Taylor's complaint was vague and ambiguous regarding her purported attempt to claim intermittent FMLA leave in November 2015. See Taylor, 2016 WL 4988054, at *5. The Court assumed, for purposes of that decision, both that Taylor was entitled to intermittent FMLA leave in November 2015 and that Taylor's request for IRT was sufficient to reasonably apprise the Powerline Specialists of her request to take time off for a serious health condition. Id. The Court then held that Taylor had failed to sufficiently allege that she was prejudiced by the Powerline Specialists' initial denial of IRT. Id. The Court did not address the specific issue presented in this motion to dismiss — namely, whether the FMLA entitles an employee to a specific designation of paid leave offered under an employer's policy. The law-of-the-case doctrine does not prevent the Court from addressing the new legal question that J. C. Penney has advanced in its most recent motion to dismiss. See Wright v. Cam Hiltz Trucking, No. 13-CV-14690, 2014 WL 6675382, at *2-3 (E.D. Mich. Nov. 25, 2014) (district court might abuse its discretion by refusing to address the merits of a new argument based on the law-of-the-case doctrine).

---

12-week FMLA leave entitlement if the employee is properly notified of the designation when the leave begins.").

Therefore, Taylor's contention that the paid leave for the November 2 absence should have been designated as IRT, as opposed to PTO, does not state a plausible claim of interference under the FMLA. This theory of count one of the amended complaint is dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court grants J. C. Penney's partial motion to dismiss (Dkt. 15) and dismisses the first two theories of liability for FMLA interference found in count one of Taylor's amended complaint.

SO ORDERED.

Dated: May 10, 2017  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 10, 2017.

s/Karri Sandusky
Case Manager